THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN ARCADIO BONILLA VÁZQUEZ, Defendant and Appellant.

No. CR-69-29.     Decided March 17, 1970.

*Julio García Antique* for appellant. *Gilberto Gierbolini, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* for The People.

PER CURIAM: Juan Arcadio Bonilla Vázquez was accused and convicted of rape by the court (33 L.P.R.A. § 961). He was sentenced to serve from 2 to 10 years in the penitentiary.

On appeal, he assigns that the trial court erred in admitting the testimony of a policeman and a detective in relation to what the prosecutrix told them, because the latter is not part of the res gestae.[1]

The prosecutrix, a married woman, mother of nine children, testified that on August 28, 1968, at about 8:00 in the evening, she left the restaurant where she worked in Utuado, to return to her house; that on passing near Jesús López School, appellant, who was poorly dressed with a shirt tied with a knot and having no buttons, grasped her, covered her mouth with one hand, grasped her throat with the other, and dragged her towards the back of the school dining room,

---

[1] Rule 154 of the Rules of Criminal Procedure provides that upon a trial for rape the defendant cannot be convicted upon the sole testimony of the woman upon or with whom the offense was committed, unless her testimony is corroborated by other evidence which in itself *tends to connect the defendant with the commission of the offense.*

stripped her of her underwear and raped her; that later on he told her that he was a fugitive from justice and that if she accused him he would kill her; that she started to run towards her house screaming "a man is going to kill me"; that when she arrived she had the sensation that her husband grasped her, "the people were holding me and I screamed, 'a man is going to kill me' . . . I cannot go in search of him because he said he would kill me if I accused him"; that she suffered injuries consisting of scratches, lumps, slaps on the face, bruises, and that her mouth was bleeding; that because the people urged her, she went to the police station that same night and told policeman Delgado that "a man raped me, don't you see how I am bruised all over."

The husband of the prosecutrix testified that upon hearing the prosecutrix screaming and asking her what had happened, when she arrived "under a nervous spell, trembling, and screaming, her mouth bleeding and all mashed up . . ." she told him "a man wanted to kill me." 

Policeman Delgado testified that the prosecutrix appeared at the police station at about 8:15 p.m. on the night of the occurrence, "crying, very nervous, showing scratches on her neck, her mouth bleeding, then when I asked her what had happened, she told me that a short man wearing a red shirt had raped her. . . ."

Detective Flavio Texidor García testified that three days after the occurrence he saw the prosecutrix when she arrived very nervous at the police station, "saying to the policeman on duty that she had seen the man who had assaulted her . . . in ward La Granja . . . and I asked her what had he done to her and she told me that he had raped her, and that he had done to her whatever he wanted. . . ."

1.—The trial judge disregarded the objection to the effect that there was no corroboration. He declared, correctly, in our opinion, that "it is true that on the first occasion when she, under a nervous condition, was interrogated by her hus-

band, what she said was that they wanted to kill her; when she goes again to the policeman, *under the same nervous condition, she told the latter that she had been raped,* I under- stand that although she did not say it on the first occasion to her husband, but she did say it to the policeman, *still under the influence of said emotional and physical commotion, as she described it* . . . it is admissible and it is sufficient corrobo- ration. . . ." *People* v. *Aponte,* 77 P.R.R. 870 (1955) ; *People* v. *Dueño Maysonet,* 94 P.R.R. 676, 683–84 (1967) ; *People* v. *Díaz Ríos,* 95 P.R.R. 350, 356 (1967) ; *People* v. *De Jesús Cruz,* 94 P.R.R. 170, 177 (1967), *People* v. *Arcadio Bonilla Vázquez,* judgment of October 21, 1969.

2.—There was no evidence to corroborate the sexual act, nor to connect defendant with the commission of the offense.

When the prosecutrix arrived at the police station on the first occasion, she only said that the man who "raped" her was short and was wearing a red shirt. The prosecu- trix testified that a week after the occurrence she saw ap- pellant going along the street down from her house; that she turned cold and "I went to the police station to give notice"; that then two policemen, whom she did not know, went with her to appellant's house, whose address they found out from some children. On cross-examination she said that she had identified appellant when he went to the police station, to the point that another lady who was there told her that "the description that I offered was the same as that of the man who tried to rape her daughter"; that the detective told her "that there was another case and that the person accused was identical to the one I was identifying"; that "the de- scription is the same that you gave me"; that "they were searching for a person whose identification coincided with the one I was giving."

Detective Texidor said that when the prosecutrix returned to the police station three days later to give notice that she had seen appellant, the witness went the next day to search

for appellant at his mother's house, but he did not find him there; next day his mother brought him to the police station, and upon being summoned, the prosecutrix came to the police station and "As soon as she saw him, she nervously said, that is the same person."

The defense did not object to Texidor's nor to Delgado's testimony. On the contrary, it cross-examined them extensively. It is at the close of the hearing of the case that the defense informs the trial judge "that we understand that there is no corroboration as required by the law . . . because . . . none of the witnesses for the prosecution has testified that this woman said that she has been raped. . . ."

*People* v. *Arroyo Agosto*, 93 P.R.R. 433 (1966) dealt with a conviction for the offense of assault with intent to commit rape. The theory of the defense was alibi. We said that the aforementioned Rule 154 is applicable to these cases; that therefore, the description of the wrongdoer who tried to rape her offered by the prosecutrix immediately after the assault, that *of a colored, rough and strong man*, without there appearing from the record that said description corresponded to appellant, actually did not connect the latter with the commission of the offense charged against him.

In the case at bar, the description of the wrongdoer offered by the prosecutrix to policeman Delgado, upon arriving at the police station a few minutes after the occurrence of her rape, was that "he was a short man wearing a red shirt." On cross-examination, the prosecutrix did not specify whether she offered a more detailed description, nor when or to whom did she offer it. The policeman and the detective who testified did not refer to any other description whatsoever offered by the prosecutrix to connect appellant with the commission of the offense in this case. On the contrary, detective Texidor testified that the identification of appellant as the wrongdoer was offered by the prosecutrix at the police station on the fifth day after the commission of the offense, under cir-

cumstances which do not permit the conclusion that it was part of the res gestae.

In view of the foregoing, we need not consider the other assignments of appellant.

Therefore, the judgment rendered in this case by the Superior Court, Arecibo Part, on June 7, 1969, should be reversed and another rendered acquitting appellant.

Mr. Chief Justice, Mr. Justice Hernández Matos, and Mr. Justice Blanco Lugo did not participate herein. Mr. Justice Santana Becerra dissented without opinion.